WELLS, Judge,
(concurring in part and dissenting in part).
While I concur in the decision to reverse the summary denial of the instant dependency petition for further proceedings below, I cannot agree with the conclusion that because T.J. has conducted a diligent search for her father and failed to locate him that we may presume that he is unable to care for her thereby mandating an adjudication of dependency.
This appeal stems from a dependency petition filed by the Immigrant Children’s Justice Clinic at Florida International University College of Law seeking to have seventeen year old T.J. declared dependent for the express purpose of permitting her to seek special immigration juvenile status. See § 39.501(1), Fla. Stat. (2010) (“All proceedings seeking an adjudication that a child is dependent shall be initiated by the filing of a petition by an attorney for the department [of Children and Families], or any other person who has knowledge of the facts alleged.”). As the Immigration Clinic candidly admitted at oral argument, T.J. has been cared for and fully supported by her aunt since her mother died in 2004, and will continue to be so in the future; thus what T.J. is seeking here is to be declared dependent to secure a “back door” route to natural *1195 ization. While I do not believe that Chapter 39 was ever intended to secure a pathway to citizenship for foreign minors, I must agree that the manner in which that Chapter currently is written may be interpreted to provide an avenue for such use. See § 39.001(1), Fla. Stat. (2010) (stating generally the purpose of Chapter 39 as being to provide for the care, safety and protection of children).
Specifically, section 39.01(15), as pertinent here, defines a dependent child as a child who has been abused, abandoned, or neglected or who has no parent or legal guardian capable of caring for her or him: (15) “Child who is found to be dependent” means a child who, pursuant to this chapter, is found by the court:
(a) To have been abandoned, abused, or neglected by the child’s parent or parents or legal custodians;
[[Image here]]
(e) To have no parent or legal custodians capable of providing supervision and care....
§ 39.01(15), Fla. Stat. (2010).
T.J. focuses primarily on subsection (15)(e) to support her dependency claim. This is so because she does not fall within the definition of an abandoned child. Under Chapter 39 an abandoned child is one whose parent, legal custodian, or “caregiver, while being able, makes no provision for the child’s support_” § 39.01(1), Fla. Stat. (2010) (emphasis added); § 39.01(10), Fla. Stat. (2010) (defining the term caregiver as “the parent, legal custodian, permanent guardian, adult household member, or other person responsible for a child’s welfare as defined in subsection (47)) (emphasis added); § 39.01(47), Fla. Stat. (2010) (including in the definition of “[ojther person responsible for a child’s welfare,” any “adult sitter or relative entrusted with a child’s care”). ' Since it is conceded here that T.J.’s aunt has provided for T.J.’s support since 2004 and intends to continue to do so, T.J. cannot be deemed dependent as an abandoned child.
The question to be resolved is, therefore, whether T.J. has no parent or legal custodian “capable of providing supervision or care.” § 39.01(15)(e), Fla. Stat. (2010). As to whether T.J. has a legal custodian, the record is clear: she has none. See § 39.01(35), Fla. Stat. (2010) (defining the term legal custody as “a legal status created by a court”). As to whether T.J. has a parent, the record is equally clear: while T.J.’s mother died in 2004, her father is alive and living somewhere. Thus on remand, it must be determined whether TJ.’s father is “capable” of providing supervision and care to her. Anything less contravenes the express language of section 39.01(15)(e) and opens wide the door to parents wishing to secure either a back door immigration route into the United States or funds and services from the State of Florida by simply leaving an otherwise fully supported and properly cared for child with a close relative so that relative or any other kindly soul or organization may obtain a dependency adjudication.
Judgé Salter concludes that T.J. need not adduce any testimony regarding her father’s ability to care for her because, notwithstanding the trial court’s express finding to the contrary, T.J. has conducted a-diligent search and because she has been unable to locate him, need not prove anything with respect to him. As the record before us confirms, no diligent search under Chapter 39 has taken place.
Section 39.502 of the Florida Statutes clearly states that until a parent’s rights are terminated, that parent must be notified of all proceedings involving a child:
(1) Unless parental rights, have been terminated, all parents must be noti *1196 fied of all proceedings or hearings involving a child....
§ 39.502(1), Fla. Stat. (2010) (emphasis added).
Section 39.503 provides that where, as here, a parent’s whereabouts are currently unknown, the court “shall direct the petitioner to conduct a diligent search for that person before scheduling a disposition hearing regarding the dependency of the child unless the court finds that the best interest of the child requires proceeding without notice.” § 39.503(5), Fla. Stat. (2010). While by definition a diligent search is one conducted by the Department of Children and Family Services, a licensed child-caring agency, or a licensed child-placing agency[9], under section 39.503(5), it appears that the court below could direct a non-department petitioner to conduct a search. Id.
Although the court below never directed T.J. to conduct a diligent search, and the Department never conducted one, two “diligent search” affidavits were filed in this case by attorneys at Florida International University’s College of Law, Immigrant Children’s Justice Clinic. Neither of these affidavits meets the minimum legal requirements set forth in Chapter 39 and are not, as the court below recognized, legally sufficient.
More specifically, section 39.503(6) sets forth the minimum requirements necessary to constitute a diligent search. They are (1) inquiries of all relatives of the missing parent made known to the petitioner; (2) inquiries of all program offices of the department likely to have information about the missing parent; (3) inquires of state and federal agencies likely to have information about the missing parent; (4) inquires of utility companies and postal providers; (5) a thorough search of at least one electronic database specifically designed for locating persons; and, (6) inquiries of appropriate law enforcement agencies:
The diligent search required by subsection (5) must include, at a minimum, inquiries of all relatives of the parent ... made known to the petitioner, inquiries of all offices of program areas of the department likely to have information about the parent ..., inquiries of other state and federal agencies likely to have information about the parent ...., inquires of appropriate utility and postal providers, a thorough search of at least one electronic database specifically designed for locating persons, and inquires of appropriate law enforcement agencies....
§ 39.503(6), Fla. Stat. (2010) (emphasis added).
The affidavits filed in this case do not satisfy these requirements in many respects. For example, as for inquiries of all relatives of the parent made known to the petitioner, the affidavit at issue here states only that “[a] representative from the [Florida International University College of Law] Clinical Program has spoken with the Child’s aunt, [who has indicated] that she does not have an address for the father, does not know his location and she was unable to acquire any information that could lead to locating [the father].” This hearsay statement that one of the mother’s relatives does not have the father’s ad *1197 dress or know his location is simply inadequate. The question should, as the court below recognized, have been whether this child or any other known relative of the father, knew the father’s whereabouts or the names and locations of any other relatives who might have such information. Indeed, the dependency petition expressly states that T.J. has an older sibling with whom she shares parentage. Despite this admission, the affidavit nowhere states that any inquiry was made of this sibling as to the whereabouts of their father. In this respect the affidavit is woefully inadequate.
The affidavit also does not state which department program offices the petitioner contacted to inquire about T.J.’s father and it fails to state which, if any, utility providers it has contacted, all as required by section 39.503. Most importantly, however, it fails to state what efforts were made to discover his immigration status to ascertain whether he had entered the country legally and whether he had been deported, inquires that might well lead to locating him, i.e. no inquiry was made of the “federal agencies likely to have information [about the father].” See In re T.R.F., 741 So.2d 1184, 1186 (Fla. 2d DCA 1999) (“We conclude that neither [of petitioner’s] affidavits] complied with the requirements of section 39.4051(6) [now 39.503]. The affi-ant did not check the offices of the department likely to have information about the father, other state and federal agencies likely to have information about the father, utility and postal providers, or appropriate law enforcement agencies.”).
In short, the affidavits filed by the petitioner in this case failed as a matter of law to satisfy the minimum requirements of section 39.503. This court is not, therefore, in a position to reverse the trial court’s determination that a diligent search has not been conducted in order to skip directly to the conclusion that because TJ.’s father has not been found T.J. is absolved of the obligation to prove that she has no parent capable of caring for her.
Thus, while the summary denial should be reversed, T.J. is not entitled to an adjudication of dependency until such time as a diligent search is conducted in accordance with the express provisions of Chapter 39 and if her father is located, until after T.J. establishes that she is dependent as that term is defined by Chapter 39.

. In pertinent part section 39.01(24) and (70) provide:
(24) "Diligent search” means the efforts of a social service agency to locate a parent or prospective parent whose identity or location is unknown....
[[Image here]]
(70) "Social service agency” means the department, a licensed child-caring agency, or a licensed child-placing agency.
§ 39.01(24), (70), Fla. Stat. (2010) (emphasis added).